JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE TAMARISK RD. TRUST UDT 08/19/2020, PROPER T VIEW INC. AS TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. PRIETO, an individual; and DOES 1 – 10,<br><br>Defendant. | Case No. 5:23-cv-01886 SPG SP<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (ECF NO. 23)** |

    Before the Court is Defendant Prieto's motion to dismiss Plaintiff The Tamarisk Rd. Trust UDT 8/19/2020, Proper T View Inc.'s ("Plaintiff") Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Motion"). (ECF No. 23 ("Mot.")). Plaintiff opposes the Motion. (ECF No. 25 ("Opp.")). Having considered the submissions of the parties, the relevant law, arguments made during the hearing on the Motion, and the record in this case, the Court hereby GRANTS the Motion.

## I. BACKGROUND

This case arises out of a dispute over a property located at 2170 East Tamarisk Road, Palm Springs, California 92262 (the "Property"). (ECF No. 1 ("Compl.") ¶ 2). The following allegations are asserted in the Complaint.

The Property is part of Native American land. (*Id.* ¶ 3). Defendant is a member of the Agua Caliente tribe.[1] In or about April 1972, Defendant's mother, Dora Joyce Prieto ("Dora Prieto"), acquired twenty acres of real property, which included the Property, that was later developed into single family homes. (*Id.* ¶ 5). On or about February 9, 1989, Dora Prieto and Defendant entered into a "long term and automatically renewing lease agreement" that enabled Defendant to "construct, improve, and/or maintain a dwelling and related structures on the [Property] and otherwise use and occupy the premises for residential purposes" (the "Leasehold Interest"), which was approved by the Department of the Interior Bureau of Indian Affairs (the "Bureau"). (*Id.* ¶ 6; ECF No. 1 at 21). Dora Prieto passed away on October 6, 2000. (Compl. ¶ 7).

On or about September 26, 2001, Defendant obtained a $240,000 loan from Indy Mac Bank and used the Leasehold Interest as security. (*Id.* ¶ 8). In so doing, Defendant signed a "Promissory Note and Deed of Trust" granting and conveying the trustee thereof the power to sell the Leasehold Interest should Defendant default (the "September 2001 Deed of Trust"). (*Id.;* ECF No. 1 at 23–36). On October 11, 2001, the Bureau approved the September 2001 Deed of Trust and all provisions therein. (Compl. ¶ 9; ECF No. 1 at 38). Thereafter, Defendant failed to make payments and defaulted under the September 2001 Deed of Trust. (Compl. ¶ 10). On or about January 29, 2020, a Notice of Default and Election to Sell Under Deed of Trust was recorded with the County of Riverside by the foreclosure trustee. (*Id.* ¶ 12). At an August 19, 2020, auction, the Leasehold Interest

---

[1] Though not alleged within the Complaint, based on the parties' briefs, it appears undisputed that Defendant is a member of the Agua Caliente tribe. *See* (Mot. at 3; Opp. at 7).

was sold to Plaintiff.  (*Id.* ¶ 13).  On or about August 25, 2020, Plaintiff acquired the Leasehold Interest.  (*Id.* ¶¶ 13–14).

Defendant has not paid rent for his occupancy of the Property since, at least, Plaintiff acquired the Leasehold Interest.  (*Id.* ¶ 15).  However, at the time that Plaintiff acquired the Leasehold Interest, Plaintiff was not able to initiate an unlawful detainer proceeding against Defendant because of a residential eviction moratorium then in place, pursuant to then-governing COVID-19 guidelines.  (*Id.* ¶ 14).

Starting on or about October 19, 2020, Plaintiff began to serve Defendant with various notices indicating that Plaintiff was seeking to enforce its rights under the Leasehold Interest.  *See* (*id.* ¶¶ 16–18).  Specifically, on February 1, 2021, Plaintiff filed a civil action against Defendant and the former foreclosure trustees of the September 2001 Deed of Trust asserting various causes of action, including quiet title, in an action entitled *Proper T View, Inc.*, v. *Prieto, Wilmington Savings Fund Society, FSB, and ZBS Law, LLP*, bearing the case number CVPS2100537 (the "Quiet Title Action").  *See Proper T View, Inc. v. Prieto et al.*, Case No. 22-cv-661-SPG-SP (C.D. Cal. Apr. 18, 2022), Dkt. No. 1-1. On December 14, 2021, Plaintiff also filed an unlawful detainer action against Defendant seeking to gain possession of the Property in an action entitled *The Tamarisk Rd. Trust UDT 8/19/2020, Proper T View Inc. v. Michael J. Prieto*, bearing the case number UDPS2100639 (the "UD Action").  (Compl. ¶ 18).  Defendant removed both cases to federal court in April 2022. *See Tamarisk Rd. Tr. UDT 8/19/2020, Proper T View Inc. v. Prieto*, No. 22-CV-00650-SPG-SP (C.D. Cal. Apr. 14, 2022), Dkt. No. 1; *Proper T View, Inc. v. Prieto et al.*, Case No. 22-cv-661-SPG-SP (C.D. Cal. Apr. 18, 2022), Dkt. No. 1. On August 4, 2022, this Court granted Plaintiff's motions to remand both the UD Action and the Quiet Title Action to state court due to Defendant's untimely removal, awarding fees to Plaintiff in both cases. *Tamarisk Rd. Tr. UDT 8/19/2020, Proper T View Inc. v. Prieto*, No. 22-CV-00650-SPG-SP, 2022 WL 3098606, at *5 (C.D. Cal. Aug. 4, 2022); *Proper T View, Inc. as Trustee of Tamarisk Rd. Tr. UDT 8/19/2020 v. Prieto*, No. EDCV 22-00661-SPG-SP, 2022 WL 3098607, at *4 (C.D. Cal. Aug. 4, 2022).  Thereafter, the

Superior Court granted Defendant's motion for judgment on the pleadings based on a lack of subject matter jurisdiction, which Plaintiff appealed. (ECF No. 1 at 58). On August 18, 2023, the Appellate Division of the Superior Court of California, County of Riverside, issued a per curium opinion regarding the UD Action, ruling that "[t]he instant action is a dispute concerning Indian trust property and . . . the superior court has no subject matter jurisdiction over it." (*Id.* ¶ 22; ECF No. 1 at 62).

After the California Court of Appeals issued its opinion, Plaintiff commenced this action in federal court on September 15, 2023, alleging that this Court has subject matter jurisdiction because the land at issue is Native American land and because the superior court does not have jurisdiction. *See* (Compl.); *see* (*id.* ¶ 3). The Complaint asserts two causes of action: ejectment and trespass; and unpaid rents. *See* (*id.* ¶¶ 23–26, 27–32).

On December 6, 2023, Defendant moved to dismiss the Complaint based on a purported lack of subject matter jurisdiction. (Mot.). Plaintiff opposed, and Defendant replied to the opposition. (Opp.; ECF No. 27 ("Reply")).

## II.  LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts have original jurisdiction where an action arises under federal law, 28 U.S.C. § 1331, or where each plaintiff's citizenship is diverse from each defendant's citizenship and the amount "in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. . . ." 28 U.S.C. § 1332(a). Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may seek dismissal of a complaint for lack of subject matter jurisdiction. Attacks on jurisdiction under Rule 12(b)(1) may be "either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, like the one here, the party challenging jurisdiction asserts that the "allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise

invoke federal jurisdiction.").[2] The burden of demonstrating subject matter jurisdiction rests on the party asserting jurisdiction. *United States v. Orr Water Ditch Co.*, 600 F.3d 1152, 1157 (9th Cir. 2010).

### III. DISCUSSION

Plaintiff's Complaint asserts two causes of action against Defendant resulting from Defendant's purported default on the September 2001 Deed of Trust. *See* (Compl.) Plaintiff alleges that it obtained possessory rights over the Property when on August 25, 2020, Plaintiff bought the September 2001 Deed of Trust, which included the rights to the Leasehold Interest. (*Id.* ¶¶ 8, 13–14, 24). However, Defendant has remained in possession of the Property, and thus Plaintiff asserts that his possession is a trespass and seeks to eject Defendant from the Property. (*Id.* ¶¶ 24–26). Second, Plaintiff asserts an unpaid rents cause of action, alleging that Defendant has not paid rent during his purportedly unlawful occupancy of the Property, which has resulted in unpaid rent accruing at a rate of $133.33 per day since September 1, 2020. (*Id.* ¶¶ 29–32). Neither cause of action alleges a violation of federal law. Notwithstanding, the Complaint alleges that subject matter jurisdiction is grounded in a federal question, not diversity, jurisdiction. *See* (*id.* ¶ 3).

Defendant argues that the Complaint must be dismissed because the two asserted causes of action arise under state law and do not pose a federal question. Plaintiff argues that two federal statutes, 28 U.S.C. § 1346 and 25 U.S.C. § 349, confer federal jurisdiction over the dispute and that the dispute raises a substantial question of federal law because the Property is Indian Trust property.[3] The Court takes each of Plaintiff's contentions in turn.

---

[2] Though the parties do not directly specify the type of jurisdictional attack here, the Court finds that the Motion presents a facial challenge to jurisdiction by arguing that the Complaint, on its face, does not present a federal question to confer jurisdiction on this Court. *See, e.g.*, (Mot. at 3); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[3] Plaintiff also requests the Court to take judicial notice of the notices of removal Defendant filed in the UD Action and the Quiet Title action and to "disallow" Defendant from taking a position contrary to his position taken therein. (ECF Nos. 26, 26-1, 26-2; Opp. at 7).

### A. Jurisdiction Under 28 U.S.C. § 1346

Section 1346, entitled "United States as defendant," provides that district courts have subject matter jurisdiction over certain claims against the United States, including those that are founded on the Constitution. 28 U.S.C. § 1346. Here, however, the United States is not named as a Defendant. Therefore, this statute provides no basis for federal jurisdiction in this case.

### B. Jurisdiction Under 25 U.S.C. § 349

Section 349, entitled "Patents in Fee to Allottees," provides:

> At the expiration of the trust period and when the lands have been conveyed to the Indians by patent in fee, as provided in section 348 of this title, then each and every allottee shall have the benefit of and be subject to the laws, both civil and criminal, of the State or Territory in which they may reside; and no Territory shall pass or enforce any law denying any such Indian within its jurisdiction the equal protection of the law: Provided, That the Secretary of the Interior may, in his discretion, and he is authorized, whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs at any time to cause to be issued to such allottee a patent in fee simple, and thereafter all restrictions as to sale, incumbrance, or taxation of said land shall be removed and said land shall not be liable to the satisfaction of any debt contracted prior to the issuing of such patent: ***Provided further, That until the issuance of fee-simple patents all allottees to whom trust patents shall be issued shall be subject to the exclusive jurisdiction of the United States***: And provided further, That the provisions of this Act shall not extend to any Indians in the former Indian Territory.

25 U.S.C. § 349 (emphasis added). Plaintiff argues that, because no fee-simple patent regarding the Property has occurred, the sentence in bold-face gives the district court

---

However, even if Defendant's prior assertions contradict his positions taken here, such considerations are irrelevant because, regardless of the parties' positions, a district court will not exercise jurisdiction over a case where it is wanting. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (obliging courts to examine subject-matter jurisdiction issues *sua sponte*). Therefore, the Court denies as moot Plaintiff's request to take judicial notice of the notices of removal in the UD Action and Quiet Title Action, as the Court has not relied on either of those other documents.

jurisdiction over this action. *See* (Opp. at 5–6). Defendant argues that section 349 is not the jurisdictional section for the United States chapter on Indian allotments, and the section that provides for jurisdiction, section 345, does not provide jurisdiction over state law claims *against* a person of Indian blood or descent. (Reply at 3).

Section 345, entitled "Actions for Allotments," provides in relevant part:

> All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States; and said district courts are given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty (and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant); . . . Provided, That the right of appeal shall be allowed to either party as in other cases.

25 U.S.C. § 345; *see also Scholder v. United States*, 428 F.2d 1123, 1126 n.2 (9th Cir. 1970) ("28 U.S.C. § 1353 is a recodification of the jurisdictional portion of § 345.").[4]

As a threshold issue, the Court finds that § 349 does not appear to address whether district courts have jurisdiction to consider actions involving allotments. While § 349 does include the words "subject to the exclusive jurisdiction of the United States," courts do not treat this section as conferring jurisdiction in the district courts, finding instead that it "seem[s] almost purely regulatory, invoking Congress's plenary power over Indians," and considering it in the context of which governing authorities have authority over tribes, for example, taxation authority. *See Mitchell v. United States*, 664 F.2d 265, 275 (Ct. Cl.

---

[4] Section 1353 provides, in relevant part: "The district courts shall have original jurisdiction of any civil action involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any Act of Congress or treaty." 28 U.S.C. § 1353.

1981), *aff'd and remanded*, 463 U.S. 206 (1983); *Plains Com. Bank v. Long Fam. Land & Cattle Co.*, 554 U.S. 316, 329 (2008) (discussing the effects of converting tribal land into fee simple, including under § 349, and which governing authority loses "plenary jurisdiction" which "necessarily entails . . . *regulatory* jurisdiction over the use of the land by others" (emphasis added)).[5] That § 349 does not address district court jurisdiction is confirmed by § 345, the earlier section in the same chapter, which expressly permits certain actions to proceed in United States district courts. 25 U.S.C. § 345 (Indian plaintiffs "may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States," and "district courts are given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent," so long the parties to such suit is "the claimant as plaintiff and the United States as party defendant").

However, Section 345 does not permit the Court's jurisdiction over this case either. Section 345 limits its jurisdictional grant to suits brought by individuals of Indian blood or descent. *See Kumar v. Schildt*, No. CV-22-54-GF-BMM, 2022 WL 4299827, at *3 (D. Mont. Sept. 19, 2022) (reviewing case law holding that § 1353 "limits its jurisdiction to cases brought by persons of Indian blood or descent" which does not apply when the person of Indian blood or descent is the defendant); *see also United States v. Preston*, 352 F.2d 352, 354–56 (9th Cir. 1965) (finding no jurisdiction under § 345 when there was "no claim that the plaintiffs in this case are persons of Indian blood" even though the defendant was a member of the Agua Caliente tribe). Here, the person with "Indian blood or descent" is the Defendant. *See K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1033 (9th Cir. 2011) (rejecting the district court's assumption that a corporation-plaintiff could sue

---

[5] *See also Guardianship of Prieto v. City of Palm Springs*, 328 F. Supp. 716, 718 (C.D. Cal. 1971) ("25 U.S.C. § 349 is no authority for this suit being brought to the Federal court. . . . [because it] is part of the scheme of allotments of Indian lands and title affecting these allotments[,] . . . not a general grant of jurisdiction for all acts by or against an Indian allottee." (citing *United States v. Preston*, 352 F.2d 352 (9th Cir.1965))).

under § 345 because it "do[es] not authorize suit by state corporations such as [the plaintiff]"). Therefore, § 345 provides no jurisdiction for this action.[6]

### C. Jurisdiction Due to Substantial Federal Question

A federal court has federal question jurisdiction over all "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action "arises under" federal law pursuant to 28 U.S.C. § 1331 if the cause of action is created by federal law or necessarily requires resolution of a substantial question of federal law. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Whether a complaint presents a federal question "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rainero v. Archon Corp.*, 844 F.3d 832, 837 (9th Cir. 2016) (quoting *California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States*, 215 F.3d 1005, 1014 (9th Cir. 2000)). As relevant here, "for jurisdiction to exist the Complaint must assert a present right arising under federal law as opposed to a case where 'the underlying right or obligation arises only under state law and federal law is merely alleged as [an affirmative defense].'" *Pacino v. Oliver*, No. 18-CV-06786-RS, 2019 WL 13128558, at *2 (N.D. Cal. Aug. 29, 2019) (quoting *Oneida Indian Nation of N.Y. v. Cty. of Oneida* ("*Oneida I*"), 414 U.S. 661, 675 (1974)).

Plaintiff contends that a substantial federal question arises from the Complaint because Plaintiff disputes Defendant's possessory rights to the Property, which is Indian Trust Property. (Opp. at 5). Defendant argues that the state law claims, even if over Indian

---

[6] Even if the plaintiff was a tribal member, § 345 does not automatically grant jurisdiction over all actions that involve allotments and an Indian plaintiff. "Of critical importance in deciding whether jurisdiction exists under section 345 for protection of interests appurtenant to the allotment are the claims advanced by plaintiffs." *Pinkham v. Lewiston Orchards Irr. Dist.*, 862 F.2d 184, 187, 189 (9th Cir. 1988) (finding no § 345 jurisdiction over an Indian plaintiff's claims of negligence and tortious invasion of their property "[b]ecause such claims are not related to the ownership of title, or any rights appurtenant to allotment").

trust property, do not present a federal question based on the Complaint's allegations, which do not require any consideration of federal law.

Courts consistently reject jurisdiction based on a substantial federal question when the state-law dispute over interest in Indian land does not require the court to interpret any federal right. *See, e.g.*, *Pacino*, 2019 WL 13128558, at *2; *ABBA Bail Bonds, Inc. v. Grubbe*, 643 F. App'x 634, 636 (9th Cir. 2016).; *Safari Park, Inc. v. Southridge Prop. Owners Ass'n of Palm Springs*, No. 18-CV-01233-CBM, 2018 WL 6843667, at *3 (C.D. Cal. Dec. 4, 2018); *Round Valley Indian Hous. Auth. v. Hunter*, 907 F. Supp. 1343, 1349 (N.D. Cal. 1995) ("[A]ctions which involve individual members of tribes where the underlying action does not involve an Indian tribe's possessory rights should be adjudicated by the state courts."). A federal question may be raised by a possessory dispute over interest in Indian land, however, when a complaint bases the rights to a land either challenging, or due to, a federal law, federal treaty, or other inherent federal right. For example, the plaintiff-tribe in *Oneida I* asserted that it had a possessory right to the land because "aboriginal title of an Indian tribe guaranteed by treaty and protected by statute ha[d] never been extinguished." *Oneida I*, 414 U.S. at 676.[7] However, where a complaint presents only state law claims, without expressly challenging a substantial federal question, there is no federal subject matter jurisdiction only because a party is a tribal member and

---

[7] In *Oneida I*, Oneida, the plaintiff-tribe, alleged several issues of federal law on the face of the complaint:
> The complaint alleged that from time immemorial down to the time of the American Revolution the Oneidas had owned and occupied some six million acres of land in the State of New York. The complaint also alleged that in the 1780's and 1790's various treaties had been entered into between the Oneidas and the United States confirming the Indians' right to possession of their lands until purchased by the United States and that in 1790 the treaties had been implemented by federal statute the Nonintercourse Act, 1 Stat. 137, forbidding the conveyance of Indian lands without the consent of the United States.

*Oneida I*, 414 U.S. at 663–64.

the land is Indian land.[8]  The critical distinction "hinges on whether the claimed right of possession sought to be enforced arises from state law or federal law." *Pacino*, 2019 WL 13128558, at *2 (citing *Oneida I,* 414 U.S. at 677).

      Here, Plaintiff contends its right to possession of the Property is based on state law pursuant to its ownership of the September 2001 Deed of Trust, not on any federal law, treaty, or right.  *See, e.g.*, (Compl. ¶¶ 14, 25, 29); *Round Valley*, 907 F. Supp. at 1348 (finding no federal jusrisdiction "[b]ecause landlord-tenant disputes are matters of state law").[9]  The Complaint does not seek to enforce Plaintiff's rights under the September 2001 Deed of Trust based on Defendant's identity as a member of the Agua Caliente tribe.  Nor does the Complaint raise any challenge to the validity of the September 2001 Deed of Trust, or the original Leasehold Interest.  *Safari Park*, 2018 WL 6843667, at *3 (finding no federal question invoked because the plaintiff did not "contend that the right-of-way [over the tribal land] (which was approved by the BIA) is invalid or defective, only that the right-of-way expired in 2010 and the Defendants[] continued to trespass the lands"); *see also Taylor v. Anderson*, 234 U.S. 74, 75–76 (1914) (finding no federal question jurisdiction because the challenge to the deed to the Indian individual's land was only in anticipation of his defense and noting that the federal question must "appear[] in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses").

---

[8] *See All Mission Indian Hous. Auth. v. Magante*, 526 F. Supp. 2d 1112, 1116 (S.D. Cal. 2007) ("In the absence of similarly clear statutory direction, the Court does not believe that Congress intended that the federal courts would have jurisdiction over every eviction from an Indian housing unit. Such evictions could include those brought for repeated violations of miscellaneous lease provisions governing things like noise, or even landscaping requirements.").

[9] *See also Round Valley*, 907 F. Supp. at 1348 ("An action involving an Indian *tribe's*—as opposed to an individual tribe member's—possessory rights of trust land would, unquestionably, create a question of federal common law." (emphasis in original)).

The September 2001 Deed of Trust, even though it was issued only upon approval of the Bureau, does not raise a federal issue absent any "alleg[ations] [about] any problem with the underlying lease[] . . . ." *Peabody Coal Co. v. Navajo Nation*, 373 F.3d 945, 951–52 (9th Cir. 2004) ("Whether the Navajo Nation is somehow in breach of this award is an issue that can be resolved by the common law of contracts. Federal approval of the underlying leases or amendments has no material bearing on whether this award requires confirmation or enforcement."). Based on the Court's review of the Complaint, there is no claim to federal jurisdiction beyond the undisputed allegation that the Property is Indian land. Therefore, there is no substantial federal question that provides the Court with jurisdiction.

In sum, Plaintiff has failed to meet its burden of establishing this Court's jurisdiction over the present action. Accordingly, the Court dismisses the Complaint based on a lack of subject matter jurisdiction.[10]

//
//
//

---

[10] Plaintiff also states that, without federal jurisdiction, it has no legal recourse given the California Court of Appeal's decision that the state courts did not have jurisdiction over possession disputes involving Indian land and because Plaintiff is unaware of a tribal court available to hear the dispute. *See* (Opp. at 7–8). Whether Plaintiff has legal recourse or not does not confer federal jurisdiction, as district courts "possess only that power authorized by Constitution and statute." *Kokkonen*, 511 U.S. at 377; *see also All Mission Indian Hous. Auth. v. Magante*, 526 F. Supp. 2d 1112, 1117 (S.D. Cal. 2007) (rejecting the plaintiff's claim for jurisdiction premised on that "no tribal courts exist" for the members of the tribe in the case because "the lack of a presently-available alternative forum does not provide the constitutional and statutory basis required to provide jurisdiction in federal court").

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss. The Complaint is hereby DISMISSED with prejudice.

**IT IS SO ORDERED**.

DATED: March 4, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE